UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. WN144245,

Plaintiff,

v.

THE VISION AFH LLC, et al.,

Defendants.

Case No. C20-5662 TLF

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO CERTIFY

This matter comes before the Court on plaintiff's motion for summary judgment (Dkt. 21) and defendant Nitschke's motion to certify (Dkt. 32). For the reasons set forth herein, the Court:

- DENIES Nitschke's Motion to Certify (Dkt. 32);
- GRANTS Underwriter's Motion for Summary Judgment (Dkt. 21); and
- Finds that based on the specific exclusions in the Insurance Policy, Underwriters does not owe defense or indemnity coverage under policy certificate number WN 144245 for the claims of Freedom Nitschke, as personal representative of the Estate of Timothy L. Nitschke, against The Visions AFH, LLC, and Irungu.

FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying this action are largely undisputed. This action arises from a Long-Term Care Professional and General Liability Insurance Policy (the "Insurance Policy") that Certain Underwriters at Lloyd's, London ("Underwriters") issued to The Vision Adult Family Home ("The Vision AFH"). Dkt. 1, 21, 22-7 (the Insurance Policy).

The Insurance Policy contains the following provision:

1. COVERAGE – CLAIMS MADE AND REPORTED

Section 1 – Professional Liability

> Subject to the Professional Liability Limits of Liability Specified in Item 4 of the Declarations, Underwriters agree to pay those sums in excess of the Self Insured Retention that an Insured becomes legally obligated to pay as Damages, and related Defense Expenses, because of a Claim arising out of a Professional Liability Incident that occurs on or after the Retroactive Date set forth in Item 6 of the Declarations and before the expiration of the Policy Period, provided that the Claim is first made against the Insured during the Policy Period (or any applicable extended reporting period) and reported to Underwriters no later than sixty (60) days after the Claims is first made.

Dkt. 22-7 at 5.

The Insurance Policy defines "Professional Liability Incident" as:

> [A]ny act, error or omission in rendering of, or failure to render, Professional Services by an Insured. All related acts, errors or omissions in the rendering of, or failure to render, Professional Services to any one patient shall be considered one Professional Liability Incident. If a Professional Liability Incident arises from a series of related medical services, such Professional Liability Incident will be deemed to have happened at the time of the first act, error or omission in respect of which the Insured may be legally obligated to pay Damages.

Dkt. 22-7 at 23.

Further, under the Insurance Policy, "Professional Services" are:

> [S]ervices performed by an Insured at the Facilities of the Named Insured in the treatment and/or care of any Resident, and shall include:
>
> A. medical, nursing, dental, therapeutic, or other professional services provided to any person;
>
> B. the furnishing of medical supplies and appliances, medication, and food and beverages in connection with such services;
>
> C. the furnishing or dispersing of drugs, blood, blood products and medical, surgical or dental supplies and appliances; and
>
> D. education and training conducted by an Insured which results in injury caused or alleged to have been caused by a deficiency or defect in the education or training of any person.

Dkt. 22-7 at 23.

In addition to Professional Liability Coverage, the Insurance Policy also provides General Liability Coverage under the following terms:

> A. Bodily Injury and Property Damages
>
> Subject to the General Liability Limits of Liability specified in Item 4 of the Declarations, Underwriters agree to pay those sums in excess of the Self Insured Retention that an Insured becomes legally obligated to pay as Damages, and related Defense Expenses, because of a Claim for Bodily Injury or Property Damage caused by a General Liability Incident that occurs on or after the Retroactive Date set forth in Item 6 of the Declarations and before the expiration of the Policy Period, provided that the Claim for Bodily Injury or Property Damage is first made against the Insured during the Policy Period (or any applicable extended reporting period) and reported to Underwriters no later than sixty (60) days after the Claim is first made.

Dkt. 22-7 at 5-6.

Under the Insurance Policy, "General Liability Incident" means:

> an accident which results in Bodily Injury or Property Damage or a loss which results in Personal Injury or Advertising Injury, neither expected nor intended from the standpoint of the Insured.
>
> All Bodily Injury or Property Damage or Personal Injury or Advertising Injury resulting from continuous or repeated exposure to substantially the

> same general conditions shall be considered the result of one General Liability Incident, regardless of the number of locations, claimants or Insureds involved.

Dkt. 22-7 at 17-18.

Additionally, the Insurance Policy contains several exclusions that apply to both professional liability and general liability coverages. Dkt. 22-7 at 24-25. Relevant to this litigation, the Insurance Policy excludes claims arising out of, based upon, relating to or in any way involving physical abuse. *Id*. The term "physical abuse," in the Insurance Policy, means "any intentional physical contact which results in injury." Dkt. 22-7 at 22. The physical abuse provision excludes conduct arising out of physical abuse:

> [W]hether caused by, at the instigation of, at the direction of any Insured, or as a result of any act or omission by an Insured, Employee of the Insured, Residents or visitors, or from any causes whatsoever or which is caused by or contributed to by the failure of any Insured to:
>
> A. Properly train, hire, supervise, discipline or terminate any Employee;
>
> B. Properly control, monitor or supervise the treatment or actions of any client, Resident or other person whose case, custody, treatment and/or supervision has been entrusted to an Insured;
>
> C. Properly place with or remove from the care, custody, treatment or supervision of a third party, any client, Resident or other person; or
>
> D. Properly, or fully, inform any person or entity of the background, prior history, or propensity of any individual whose care, custody, treatment or supervision has been entrusted to an Insured or to a third party at the Insured's request or based on an Insured's advice.
>
> This exclusion applies whether under the guise of treatment or not, and whether or not consensual.

Dkt. 22-7 at 25. Defendant Nitschke agrees that these terms are the relevant provisions of the Insurance Policy for this litigation. Dkt. 23 at 2. The Vision AFH, does not challenge the existence or relevance of these policy provisions. Dkt. 25.

In 2018, a resident of The Vision AFH assaulted Timothy Nitschke with a glass coffee mug. Dkt. 22-2 at 2 (Lakewood Police Department Arrest Report) (Sealed). Mr. Nitschke was transported to the hospital, but passed away later that evening from his injuries. *Id*. The resident that assaulted Mr. Nitschke was arrested and admitted to the assault. *Id*.

On August 8, 2019, the Personal Representative of Mr. Nitschke's Estate filed an action against the State of Washington Department of Social and Health Services and The Vision AFH. Dkt. 33-3 (Complaint for Damages). The Vision AFH tendered the lawsuit to Underwriters and Underwriters agreed to defend The Vision AFH under a reservation of rights. Dkt. 22-6 (Letter from Underwriters to The Vision AFH).

Underwriters filed this action seeking declaratory relief, declaring that Underwriters "owes no defense or indemnity coverage under policy certificate number WN144245 for the claims of Freedom Nitschke, as personal representative of the Estate of Timothy L. Nitschke, against The Vision AFB, LLC,. And Irungu." Dkt. 1. Underwriters filed the pending motion for summary judgment arguing that Underwriters is entitled to declaratory judgment because the language of the Insurance Policy excludes coverage of claims arising from intentional resident-on-resident physical abuse. Dkt. 21.

Defendant Nitschke has opposed Underwriter's motion. Dkt. 23. Nitschke concedes that the Insurance Policy excludes claims for "physical abuse" caused by intentional or unintentional resident-on-resident violence. Dkt. 23 at 2. However, Nitschke contends that the exclusion of claims against adult family homes for negligence or neglect resulting in intentional harm violates public policy. Dkt. 23 at 2.

Therefore, Nitschke requests that the Court invalidate the physical abuse exclusion as against Washington law and public policy. Dkt. 23.

The Vision AFH has also opposed Underwriter's motion. Dkt. 25. The opposition does not challenge the cited policy exclusions and does not argue that the cited exclusions are inapplicable. Dkt. 25. Instead, The Vision AFH argues that questions of fact exist because The Vision AFH believes that Underwriters have violated the Consumer Protection Act, acted in bad faith and violated the Insurance Fair Conduct Act. Dkt. 25 at 3-9. The Vision AFH also contends that the physical abuse exclusion is unenforceable for violating public policy. Dkt. 25 at 10-12.

In addition to opposing Underwriter's motion, Nitschke filed a motion requesting the Court certify the following question to the Washington Supreme Court:

> Whether a liability insurance policy for an adult family home providing only coverage for general liability incidents and expressly excluding coverage for physical abuse violates Washington public policy and renders the exclusion of physical abuse claims unenforceable?

Dkt. 32 at 1.

Nitschke argues that the Court should certify this question because the Washington Supreme Court has not addressed coverage limitations similar to those imposed by the Insurance Policy. Dkt. 32 at 3. Additionally, Nitschke argues that the proposed question is unsettled and has significant policy ramifications for all Washington insureds and insurers. Dkt. 32 at 3-13. Underwriters opposed the motion to certify. Dkt. 35. The Vision AFH has not taken a position regarding the motion to certify.

DISCUSSION

A. Motion to Certify

The Revised Code of Washington provides the standard for certifying a question to the Washington Supreme Court:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of the state in order to dispose of such proceedings and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto.

RCW 2.60.020. The decision whether to certify to the Washington Supreme Court rests in the discretion of the federal court considering certification. *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1223 (9th Cir. 2021).

Certification is “particularly appropriate” for novel questions in unsettled areas of state law. *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974). Certification is also an appropriate course of action where there is an absence of clear precedent and the answer will have far-reaching effects on those subject to the state law. *Keystone Land & Dev. Co. v. Xerox Corp.*, 353 F.3d 1093, 1097 (9th Cir. 2003).

However, even when state law is unclear, the Court is not obligated to use the certification process. *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1009 (9th Cir. 2009). The Court’s role when hearing an action under diversity jurisdiction is to predict how the state high court would resolve the issues before the Court. *United States Bank, N.A. v. White Horse Estates Homeowners Ass’n*, 987 F.3d 858, 868 (9th Cir. 2021) (“[Courts] regularly decide issues of state law without certifying questions to the state’s highest court.”). When deciding whether certification is appropriate, the Court

considers: "(1) whether the question presents important public policy ramifications yet unresolved by the state court; (2) whether the issues is new, substantial, and of broad application; (3) the state court's caseload and (4) the spirit of comity and federalism." *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (internal quotations omitted).

Certification is not necessary in this action because analogous authority from the Washington Supreme Court and Washington Court of Appeals provides the Court clear guidance in determining whether the exclusion provision in question violates public policy. As the Court will address in this Order, the Washington courts have expressed reluctance to void the term of a contract as a violation of public policy unless the provision violates clear specific legislation or judicial decisions. *Mendoza v. Rivera-Chavez*, 140 Wn.2d 659, 662-63 (2000); *Yaron v. Conley*, 17 Wn. App. 2d 815, 829 (2021); *Allstate Ins. Co. v. Hammonds*, 72 Wn. App. 664, 671 (1994). While the Washington courts have not addressed whether a policy excluding physical abuse violates public policy, there are sufficient analogous authority that the Court can apply to determine the issues before the Court. *Int'l Marine Underwrites v. ABCD Marine, LLC*, 179 Wn.2d 274, 288 n.15 (2013); *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 209 (1982); *Gaddis v. Safeco Ins. Co.*, 58 Wn.App. 537, 543 (1990). Accordingly, although Washington courts have not applied relevant case law to the specific facts of the current litigation, the issue before the Court is not a new one and sufficient case law exists to guide the Court's decision.

Based on the foregoing discussion, the Court declines to certify the issues before this Court to the Washington Supreme Court.

B. Motion for Summary Judgment

Summary judgment is supported if the materials in the record "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this context, materiality means the fact is one that is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit"; thus, materiality is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The non-moving party is required to show that genuine issues of material fact "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.'" California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250) (emphasis in original). When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson,* at 255. Yet the Court is not allowed to perform the jury's function – the Court may not weigh evidence, draw legitimate inferences from facts, or decide credibility. *Id*. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her

response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(c). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Id.*

Based on the record and the parties' briefing, it appears that there are no questions of fact regarding the relevant language of the Insurance Policy or the events underlying the state court action that triggered this litigation. The parties do not dispute that the relevant language of the Insurance Policy excludes physical abuse of a resident by another resident. Dkt. 21 at 9 (Underwriter's Motion); Dkt. 23 at 2 (Nitschke's Opposition); Dkt. 25 (The Vision AFH's Opposition). Additionally, there is no dispute that the underlying state court action for which The Vision AFH seeks defense and indemnification stems from a resident-on-resident assault that occurred at the Vision AFH facility. Dkt. 21 at 2-5; Dkt. 25; Dkt. 32 at 4-5 (Nitschke's Motion for Certification).

Underwriters and Nitschke agree that only questions of law remain regarding the enforceability of the "physical abuse" exclusion in the Insurance Policy. The Vision AFH alleges that questions of fact remain regarding whether Underwriter's acted in bad faith or violated the Consumer Protection Act and the Insurance Fair Conduct Act.

1. Public Policy

An insurer may limit their contractual liability as long as the limitation is not contrary to statute or public policy. *Findlay v. United Pacific Ins.*, 129 Wn.2d 368, 379 (1996); *Ibrahim v. AIU Ins. Co.*, 177 Wn. App. 504, 513 (2013). Determining if a contract

violates public policy is a question of law. *Yaron v. Conley*, 17 Wn. App. 2d 815, 829 (2021).

Courts are generally reluctant to void the term of a contract as being contrary to public policy unless the provision is "clearly contrary to what the legislature or judicial decision has declared to be the public policy or [it] manifestly tend[s] to injure the public in some way." *Id*. (citing *Motor Contract Co. v. Van Der Volgen*, 162 Wash. 449, 454 (1931)); *see, Allstate Ins. Co. v. Hammonds*, 72 Wn. App. 664, 671 (1994) ("[P]ublic policy arguments are generally successful only if supported by specific legislation or judicial decisions."). Courts must carefully look to particular statutory provisions in defining public policy and must be cautious to avoid making public policy from whole cloth. *Mendoza v. Rivera-Chavez*, 140 Wn.2d 659, 663 (2000).

Washington courts have held that insurers may limit coverage when the nature of the risk is altered by factors not contemplated in computing premiums. *Int'l Marine Underwrites v. ABCD Marine, LLC*, 179 Wn.2d 274, 288 n.15 (2013) (citing *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 209 (1982)). However, insurers cannot exclude coverage based solely on the types of victims that are injured. *Wiscomb*, 97 Wn.2d at 209. Exclusions have been held to violate public policy when they manifest no relation to any increased risk faced by the insurer or when innocent victims are denied coverage for no good reason. *Gaddis v. Safeco Ins. Co.*, 58 Wn.App. 537, 543 (1990).

Nitschke relies on the *Wiscomb* case to support the argument that the physical abuse exclusion violates Washington public policy. Dkt. 23. In *Wiscomb*, the Washington State Supreme Court considered RCW 46.29, the Washington financial responsibility act. *Wiscomb*, 97 Wn.2d at 206. While the statute does not require

mandatory insurance coverage, the Court held that the statute conveyed a strong public policy favoring assuring monetary compensation to people who suffer injuries from other's negligent use of public highways. *Id*. The Court reasoned that the legislature demonstrated this intended policy by requiring that the responsible driver demonstrate either liability insurance coverage or financial responsibility sufficient to cover a loss. *Id*. The Court also recognized that prior case law indicated a strong public policy in favor of assuring monetary protection for innocent victims of automobile accidents. *Wiscomb,* 97 Wn.2d at 207 (citing *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332 (1972); *La Point v. Richards*, 66 Wn.2d 585 (1965)).

The Court concluded that a policy provision excluding any member of the family of the insured, residing in the same household as the insured, violated this strong public policy of protecting innocent victims of automobile accidents. *Wiscomb*, 97 Wn.2d at 208. This exclusion violated the public policy because it excluded from protection an entire class of innocent victims for no good reason. *Id*. The Court was particularly critical of the exclusion because it focused "not on the risk associated with who is driving the vehicle, but on which parties are injured." *Id*. at 209. However, the Court noted that this situation was distinguishable from a situation where a policy excluded liability based on the conduct of the driver, the party who is or may be negligent. *Id*. The Court explained that provisions based on the conduct of the driver have been held enforceable because they seek to exclude coverage because the nature of the risk is altered by factors not contemplated by the insurer in computing premiums. *Id*.

The Washington State Legislature has tasked the Department of Social and Health Services with adopting rules and standards regarding the licensing and operation

of adult family homes. RCW 70.128.040. These rules and standards must carry out the purpose of RCW 70.128, which include (1) encouraging the establishment and maintenance of homes that provide a humane, safe, and residential home environment for persons with functional limitations and (2) establish standards for regulating adult family homes that adequately protect residents. RCW 70.128.007.

In support of the argument that the physical abuse exclusion violates public policy, Nitschke points to WAC 388-76-10191. WAC 388-76-10191 sets forth, as a licensing requirement, that adult family homes must obtain and maintain insurance as required in WAC 388-76-10192 and 388-76-10193.

WAC 388-76-10192 requires that adult family homes have commercial general liability insurance or business liability insurance that includes:

> (1) Coverage for the acts and omissions of any employee or volunteer;
>
> (2) Coverage for bodily injury, property damage, and contractual liability;
>
> (3) Coverage for premises, operations, independent contractors, products-completed operations, personal injury, advertising injury, and liability assumed under an insured contract; and
>
> (4) Minimum limits of:
>
> a. Each occurrence at five hundred thousand dollars; and
> b. General aggregate at one million dollars.

WAC 388-76-10193 requires that adult family homes with professional licenses or that employ professional licensed staff to have professional liability insurance or errors and omissions insurance that includes:

> (1) Coverage for losses caused by errors and omissions of the adult family home, its employees, and volunteers; and
>
> (2) Minimum limits of:

a. Each occurrence at five hundred thousand dollars; and
b. Aggregate at one million dollars.

Nitschke argues that these statutes create an express public policy of encouraging the establishment and maintenance of safe adult family homes and protecting residents by mandating minimum liability insurance coverage. Dkt. 21 at 13. Additionally, Nitschke contends that, by mandating a minimum level of insurance coverage, these statutes create a public policy that is even stronger than the one the Court relied on to invalidate the policy provision in *Wiscomb*. *Id*.

The instant case is distinguishable from the situation in *Wiscomb* because the public policy in *Wiscomb* was supported by both specific statutory language and specific prior judicial decisions directly supporting the existence of the public policy. Neither situation exists here.

According to WAC 388-76-10192, an adult family home is required to be insured for the acts and omissions of any employee, volunteer, and independent contractor and for operating the premises. WAC 388-76-10192 (1)-(4). The statute requires the adult family home have insurance that covers bodily injury, property damage and contractual liability that arises from the acts and omissions described in the statute. WAC 388-76-10192 (2). WAC 388-76-10193(1) requires the adult family home to be insured from loss caused by errors and omissions of the adult family home, its employees, and volunteers.

The statutory language of WAC 388-76-10192 and WAC 388-76-10193 indicate a public policy of providing monetary protection for residents of adult family homes from the acts, errors, and omissions of the adult family home itself, its employees, volunteers,

and contractors. The language of the statute is silent regarding the acts or omissions of third parties that do not work for the adult family home. The cited provisions do not address or require adult family homes to be insured against loss from the conduct of residents or guests of the adult family home. Nitschke has not cited to specific statutory language or case law which indicate the legislature's intent to require adult family homes to be insured against loss from the intentional conduct of their residents.

Without specific statutory language or judicial decisions indicating a legislative intent to create a public policy, the Court cannot find that Washington has a public policy requiring adult family homes to be insured against the intentional harmful conduct of residents. *Mendoza*, 140 Wn.2d at 663; *Yaron*, 171 Wn. App. 2d at 829; *Hammonds*, 72 Wn. App. at 671. Accordingly, the physical abuse exclusion does not violate public policy by excluding coverage of losses arising from resident-on-resident violence.

Additionally, even if specific statutory language or judicial decisions supported a finding of a public policy regarding the conduct of residents, the physical abuse exclusion would not violate such public policy. The Court in *Wiscomb* noted a distinction between provisions that exclude coverage based on conduct that alters the nature of the risk insured and provisions that exclude coverage based on the class of party injured. 97 Wn.2d at 209. The Court explained that if the policy had excluded coverage based on the nature of the risk being altered by facts not contemplated in computing premiums the provision would be enforceable. *Id*. Washington courts have explained that insurers can limit coverage based on the nature of excluded conduct. *Int'l Marine Underwriters*, 179 Wn.2d at 288 n. 15; *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 113 (1990). However, a policy provision violates public policy when it has no relation to

any increased risk faced by the insurer, when innocent victims have been denied coverage for no good reason, or the exclusion seeks to exclude coverage based solely on the type of injury or who was injured. *Mendoza*, 140 Wn.2d at 667-68; *Wiscomb*, 97 Wn.2d at 209; *Gaddis*, 48 Wn.App. at 543.

The exclusion in question here, relates to the nature of the risk that Underwriters has contracted to cover. The physical abuse provision excludes coverage based on the conduct causing the loss – intentional physical contact resulting in injury – not based on who the injured party is or the type or extent of injury. Additionally, the policy excludes intentional misconduct which is directly related to the nature of risk faced by the insured. Accordingly, even if the statutory language created a public policy in this action, the physical abuse exclusion would not be invalid under the analysis set forth in *Wiscomb*.

For the reasons set forth above, the physical abuse exclusion in the Insurance Policy is enforceable and is not invalid as a violation of public policy.

2. Bad Faith, Consumer Protection Act and Insurance Fair Conduct Act

The Vision AFH argues, without citing to any evidence in the record, that genuine issues of material fact remain because The Vision AFH believes that Underwriters have violated the Consumer Protection Act and the Insurance Fair Conduct Act. Dkt. 25 at 4-9. The Vision AFH also argues that questions of fact exist because Underwriters is allegedly liable for the tort of insurance bad faith. *Id*. The Vision AFH asserts these alleged violations of law without citing to any evidence supporting these legal conclusions, or explaining how Underwriters allegedly committed these violations.

The Vision AFH's argument is unpersuasive because conclusory assertions of statutory violations without supporting factual development or evidence is insufficient to

demonstrate genuine issues of material fact. Fed. R. Civ. P. 56(c). A party asserting a fact is genuinely disputed must support the assertion by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations […], admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A).

3. Insurance Policy

It is undisputed that the Insurance Policy excludes claims arising out of, based upon, relating to or in any way involving physical abuse, including resident-on-resident violence. The Insurance Policy defines physical abuse as any intentional physical contact which results in injury. It is undisputed that the claims underlying this action arise from intentional resident-on-resident violence at The Vision AFH.

As has been discussed in this Order, the physical abuse exclusion in the Insurance Policy is enforceable and does not violate public policy. Accordingly, because the underlying litigation that The Vision AFH tendered to Underwriters arises directly from an intentional resident-on-resident assault, coverage is expressly excluded under the Insurance Policy.

CONCLUSION

Based on the foregoing discussion, and because no genuine issues of material fact remain in this action, the Court:

- DENIES Nitschke's Motion to Certify (Dkt. 32);
- GRANTS Underwriter's Motion for Summary Judgment (Dkt. 21); and
- Finds that based on the specific exclusions in Insurance Policy, Underwriters does not owe defense or indemnity coverage under policy

certificate number WN 144245 for the claims of Freedom Nitschke, as personal representative of the Estate of Timothy L. Nitschke, against The Visions AFH, LLC, and Irungu.

Dated this 23rd day of September, 2021.

Theresa L. Fricke
United States Magistrate Judge