1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON SUBSCRIBING TO POLICY NO.
WN144245,

                Plaintiff,

    v.

THE VISION AFH LLC, et al.,

                Defendants.

Case No. C20-5662 TLF

ORDER ON MOTION FOR
RECONSIDERATION

12         This matter comes before the Court on Defendant Nitschke's Motion for

13   Reconsideration (Dkt. 42). For the reasons set forth herein, the motion for

14   reconsideration is DENIED.

15         <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

16         This action arises from a Long-Term Care Professional and General Liability

17   Insurance Policy (the "Insurance Policy") that Certain Underwriters at Lloyd's, London

18   ("Underwriters") issued to The Vision Adult Family Home ("The Vision AFH"). Dkt. 1, 21,

19   22-7 (the Insurance Policy).

20         On September 23, 2021, the Court issued an order denying defendant Nitschke's

21   motion to certify to the Washington Supreme Court (Dkt. 32) and granting plaintiff's

22   motion for summary judgment (Dkt. 21). Dkt. 38. On October 7, 2021, Nitschke filed a

23   motion for reconsideration. Dkt. 42. Nitschke argues that the Court should reconsider

24
25

1   the previous order because the Court committed manifest error in concluding that the

2   physical abuse exclusion is enforceable and not invalid as a matter of public policy.

3                    NITSCHKE'S MOTION FOR RECONSIDERATION

4          Motions for reconsideration are generally disfavored under the Court's local

5   rules:

6          Motions for reconsideration are disfavored. The court will ordinarily deny
           such motions in the absence of a showing of manifest error in the prior
7          ruling or a showing of new facts or legal authority which could not have
           been brought to its attention earlier with reasonable diligence.
8
    Local Rules W.D. Wash. CR 7(h)(1). Such motions are an "extraordinary remedy," and
9
    "should not be granted, absent highly unusual circumstances, unless the district court is
10
    presented with newly discovered evidence, committed clear error, or if there is an
11
    intervening change in the controlling law." *Kona Enters., Inc. v. Estate of Bishop*, 229
12
    F.3d 877, 890 (9th Cir. 2000) (internal citations omitted). Nitschke has not presented the
13
    Court with newly discovered evidence or a change in controlling authority. Nitschke's
14
    motion for reconsideration argues only that the Court committed manifest error in
15
    determining that the physical abuse provision is not void as a violation of public policy.
16
           Courts are generally reluctant to void a term of a contract as being contrary to
17
    public policy unless the provision is "clearly contrary to what the legislature or judicial
18
    decision has declared to be the public policy or [it] manifestly tend[s] to injure the public
19
    in some way." *Yaron v. Conley*, 17 Wn. App. 2d 815, 829 (2021). Courts must carefully
20
    look to particular statutory provisions in defining public policy. *Mendoza v. Rivera-*
21
    *Chavez*, 140 Wn.2d 659, 663 (2000).
22
           "Because public policy is generally determined by the Legislature and expressed
23
    through statutory provisions, the proper starting place for a public policy analysis is in
24

25

applicable legislation." *Am. Home Assur. Co. v. Cohen*, 124 Wn.2d 865, 875 (1994). In construing statutory provisions, courts assume that the legislature was aware of the established common law rules applicable to the subject matter of the statute when it was enacted. *State ex rel. Madden v. Pub. Util. Dist.*, 83 Wn.2d 219, 222 (1973). Therefore, "absent an indication that the Legislature intended to overrule the common law, new legislation will be presumed to be consistent with prior judicial decisions." *In re Marriage of Williams*, 115 Wn.2d 202, 208 (1990).

In Washington, insurers may limit coverage when the nature of the risk is altered by factors not contemplated in computing premiums. *Int'l Marine Underwrites v. ABCD Marine, LLC*, 179 Wn.2d 274, 288 n.15 (2013) (citing *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 209 (1982)). Yet, exclusions have been held to violate public policy when they manifest no relation to any increased risk faced by the insurer or when innocent victims are denied coverage for no good reason. *Gaddis v. Safeco Ins. Co.*, 58 Wn.App. 537, 543 (1990). Insurers cannot exclude coverage based solely on the types of victims that are injured. *Wiscomb*, 97 Wn.2d at 209.

The applicable regulations in this case are WAC 388-76-10191, 388-76-10192, and 388-76-10193 (collectively the "Regulations"). These regulations were promulgated by the Washington State Department of Social and Health Services under RCW 70.128.040. According to RCW 70.128.040(1), the rules and standards for licensing adult family homes "shall recognize the residential family-like nature of adult family homes and not develop rules and standards which by their complexity serve as an overly restrictive barrier to the development of the adult family homes in the state."

Under Washington law, rules of statutory interpretation apply to regulations and administrative rules. *Cannon v. Department of Licensing,* 147 Wn.2d 41, 56 (2002). The Washington Supreme Court "will not add to or subtract from the clear language of a statute, rule, or regulation. . . unless the addition or subtraction of language is imperatively required to make the statue rational." *Ingram v. Department of Licensing,* 162 Wn.2d 514, 526 (2007), *quoting, Cannon,* 147 Wn.2d at 57.

In this situation, the regulations are clearly worded, consistent with the statutory authority, and rational. WAC 388-76-10191 sets forth, as a licensing requirement, that adult family homes must obtain and maintain insurance as required in WAC 388-76-10192 and 388-76-10193.

WAC 388-76-10192 requires that adult family homes have commercial general liability insurance or business liability insurance that includes:

(1) Coverage for the acts and omissions of any employee or volunteer;

(2) Coverage for bodily injury, property damage, and contractual liability;

(3) Coverage for premises, operations, independent contractors, products-completed operations, personal injury, advertising injury, and liability assumed under an insured contract; and

(4) Minimum limits of:
    a. Each occurrence at five hundred thousand dollars; and
    b. General aggregate at one million dollars.

WAC 388-76-10193 requires that adult family homes with professional licenses or that employ professional licensed staff to have professional liability insurance or errors and omissions insurance that includes:

(1) Coverage for losses caused by errors and omissions of the adult family home, its employees, and volunteers; and

(2) Minimum limits of:
    a. Each occurrence at five hundred thousand dollars; and

b. General aggregate at one million dollars.

The Regulations do not expressly require adult family homes to maintain insurance coverage for loss arising from the intentional conduct of its residents.

Nitschke's motion for reconsideration first argues that the Regulations implicitly require adult family homes to maintain insurance coverage for loss arising out of the intentional conduct of their residents. To support this argument, Nitschke points to a Washington State Supreme Court case that was decided thirteen years before DSHS promulgated the Regulations. *See Niece v. Elmview Grp. Home*, 131 Wn.2d 39 (1997).

In *Niece*, the Court was asked to determine the tort theories under which a group home for the developmentally disabled may be held liable for the sexual assault of a resident by a staff member. The Court held that group homes for the developmentally disabled owe a duty of reasonable care to protect its residents from all foreseeable harms, including harm from other residents. *Id.* at 51. The court reasoned that a special relationship existed between the plaintiff and the group home because she had a total inability to take care of herself and the group home was responsible for every aspect of her wellbeing. *Id.* The Court concluded that this special relationship gave rise to the home's duty to protect the residents from all foreseeable harm. *Id.*

Nitschke argues that because DSHS did not indicate an intent to overrule the common law, the Regulations must be presumed to be consistent with the decision in *Niece*. Therefore, Nitschke contends, the regulations themselves indicate the legislature's intent to require adult family homes to be insured against the intentional harmful conduct of its residents. Nitschke raised this argument in opposition to the motion for summary judgment. *See* Dkt. 23 at 14.

1   The instant case is distinguishable from *Niece* and the holding of that case is

2  inapplicable to the issue before this Court. *Niece* held that group homes for the

3  developmentally disabled are liable under tort law when they fail to protect their

4  residents from foreseeable harm, and in that case the harm was an intentional tort

5  committed by a staff member – not by a group home resident. *Niece* did not hold that

6  adult group homes must be insured against loss arising from the intentional conduct of

7  their residents. Whether a group home can be held liable under a theory of tort law is a

8  separate issue from whether group homes are required to maintain insurance coverage

9  for the intentional torts committed by residents.

10   Neither the legislature nor DSHS included language in the statute or regulations

11  concerning licensing requirements for adult family homes that would require adult family

12  homes to maintain insurance for personal injury caused by the intentional conduct of

13  their residents and "[the Court] must not add words where the legislature has chosen

14  not to include them."  *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682 (2003).

15  The Legislature's statutory language, and the DSHS regulatory language concerning

16  licensing requirements for adult family homes do not indicate an intent to require such

17  coverage.

18   Nitschke also argues the Court erred in concluding that the physical abuse

19  provision relates to the nature of the risk that Underwriters contracted to cover. Nitschke

20  argues that the physical abuse provision violates public policy because it denies

21  coverage for certain types of bodily injury—those caused by the intentional conduct of

22  other residents.

1

The physical abuse provision in this case excludes coverage for intentional

2
conduct. The exclusion is based on the type of harmful conduct not on the type of injury

3
or category of persons injured. The intentional misconduct of third parties directly alters

4
the nature of the risk insured. Accordingly, the physical abuse provision of the Insurance

5
Policy is not invalid as a violation of public policy.

6
CONCLUSION

7
Based on the foregoing discussion, Nitschke has not made a showing of manifest

8
error in the previous ruling nor presented new evidence or legal authority warranting

9
reconsideration. Accordingly, Nitschke's motion for reconsideration (Dkt. 42) is DENIED.

10
Dated this 24th day of November, 2021.

11

12

13
*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

ORDER ON MOTION FOR RECONSIDERATION - 7